Chester M. HIMEL, as Administrator of the Estate of Mary M. Himel, Deceased, et al., Plaintiffs,

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant.

No. 72 C 1542.

United States District Court, N. D. Illinois, E. D.

April 25, 1977.

Russell Woody, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for plaintiffs.

George W. Hamman, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge:

Plaintiffs in this cause are the beneficiaries of a trust established in the will of their grandfather, Antonio Mora, on September 30, 1928. Defendant, Continental Illinois National Bank and Trust Company of Chicago ("Continental"), has been since 1929, and is presently the trustee of the aforementioned "Mora trust." The gravamen of plaintiffs' complaint is that Continental, in its operation of the Mora trust, breached its common law fiduciary duty to plaintiffs and violated the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b). Plaintiffs allege that since the creation of the Mora trust, Continental acted improperly by:

(1) "padding" its fees as trustee;

(2) failing to adhere to the directions in Mr. Mora's will concerning the investment of the trust res;

(3) retaining and purchasing securities which were prohibited by law;

(4) engaging in unlawful self-dealing and conflicts of interests in relation to the trust;

(5) purchasing, retaining, and/or selling securities or other investments which it knew or should have known were poor risks and should not have been purchased or retained, or which were of high quality and should not have been sold; and

(6) generally managing the affairs of the trust in a careless, negligent and incompetent manner.

Furthermore, plaintiffs allege that it was these aforementioned acts by Continental which caused the Mora trust to lose large sums of money, and plaintiffs request the removal of Continental as trustee as well as monetary relief.

Before the court at this time is Continental's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56. Relying on the doctrines of res judicata, collateral estoppel, and judicial estoppel, defendant contends that a prior state court proceeding between these same parties or their privies precludes plaintiffs from claiming that the investment decisions made by Continental were the cause of any losses incurred by the Mora trust prior to June 16, 1961. After reviewing the affidavits and memoranda filed by the parties, this court agrees with defendant that the doctrine of res judicata bars plaintiffs from raising any claims arising prior to June 16, 1961 and, there being no genuine issue of material fact, defendant's motion for partial summary judgment is granted.

The undisputed relevant facts are as follows: On February 15, 1961, plaintiffs, or their predecessors in interest, filed an action in Chancery in the Circuit Court in Cook County, Illinois against the defendant. Plaintiffs sought reformation of that portion of the Mora will which restricted Continental's discretion in making investments and provided that:

It is my [Mr. Mora's] desire that my Trustee keep my trust estate so invested as to produce the highest possible income consistent with reasonable security and to that end, I direct that my Trustee invest

the funds of said trust estate, as they are paid in, from time to time, in notes secured by mortgages or trust deeds which shall be first liens on what is commonly called the 'Corn Belt', that is, the States of Illinois and Iowa and Southern Minnesota, or in high grand [sic] bonds. It is my desire that insofar as is reasonably possible, all investment of said Trust funds be made in securities bearing at least five percent (5%) interest.

Plaintiffs alleged that since the establishment of the trust the value of the corpus declined from $390,000.00 to $335,000.00 and "that this decline in the dollar value of the Trust corpus has resulted from said limitation on investments." Plaintiffs sought a decree permitting "the Trustee to deviate from the terms of the Trust in order to accomplish the purposes of the Trust as intended by the Testator."

At the hearing on plaintiffs' 1961 complaint, plaintiffs presented evidence showing that for many years they had been concerned with the decline in value of the trust corpus and that unless the trustee's hands were "untied" the value of the trust would continue to deteriorate. As Robert Himel, predecessor in interest to Chester Himel, one of the plaintiffs herein, testified:

Well, the bank had no choice but to follow to the letter exactly the way the Will was written. And when you are buying securities at above the redemption value, of necessity when they are redeemed you will have lost part of the principal. . . . It is under the way that they were forced to operate, there is no possibility that we could readily see where they can reverse this trend and start building it up.

Based on this and other evidence the Chancery court granted plaintiffs' request to reform the Mora will stating that "the Trustee [had] properly limited investments of the trust assets, since the inception of the trust, solely in notes secured by mortgage or trust deeds constituting first liens on improved property and in bonds," and that "if the Trustee [continued] to invest only in

such debt securities the testator's primary intention . . . [would] be frustrated."

 Basically, the doctrine of res judicata provides that a final judgment in a prior suit bars the maintenance of a second proceeding between the same parties when both suits involve the same "cause of action." *See* 1B J. Moore, Federal Practice ¶ 0.410[1] at 1154 (1974). While what constitutes a single "cause of action" for purposes of res judicata is not subject to precise definition, Professor Moore has indicated that courts in discussing the issue have considered:

whether the same right is infringed by the same wrong; whether "there is such a measure of identity that a different judgment in the second [action] would destroy or impair rights or interests established by the first" judgment; identity of grounds; whether the same evidence would suffice to sustain both judgments.

*Id.* at 1158. Nevertheless, it appears to this court that the primary test for determining if two suits are premised on the same cause of action is whether both suits arise out of the same basic factual situation. *See Hanson v. Hunt Oil Co.,* 505 F.2d 1237, 1240 (8th Cir. 1974); *Pierog v. H. F. Karl Contractors, Inc.,* 39 Ill.App.3d 1057, 351 N.E.2d 249 (1976). Plaintiffs, in instituting litigation, are required under res judicata doctrine to present all their claims arising out of one factual situation in one suit in order to preserve judicial resources and to prevent undue harassment of defendants. Thus, res judicata is given a broad scope precluding litigation of all "matters which *might* have been presented to sustain or defeat the right asserted in the earlier proceeding," even if those matters were not presented or litigated in the prior proceeding. *Lambert v. Conrad,* 536 F.2d 1183, 1185 (7th Cir. 1976) (emphasis supplied); *see also Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *United States v. California & Oregon Land Co.,* 192 U.S. 355, 24 S.Ct. 266, 48 L.Ed. 476 (1904); *Pierog v. H. F. Karl Contractors, Inc., supra.*

In the present action, plaintiffs' complaint arises out of the various investment decisions made by Continental in its administration of the Mora trust, including those investment decisions made prior to 1961. However, the prior 1961 litigation between these parties also arose out of Continental's pre-1961 investment decisions. Under Illinois law, in an action for reformation of a restrictive investment provision in a trust, the trust beneficiaries must allege and establish that the investment decisions made by the trustee, being limited in scope by the terms of the trust, have caused the decline in the value of the trust corpus and that such a decline in value would continue unless the trustee was allowed to invest more liberally. *See Stephens v. Collison,* 274 Ill. 389, 113 N.E. 691 (1916); *Curtiss v. Brown,* 29 Ill. 201 (1862); G. Bogert, The Law of Trusts & Trustees § 562, at 143–45 (1960); J. Pomeroy, Equity Jurisprudence § 1062, at 170–76 (1941). *See also Northern Trust Co. v. Thompson,* 336 Ill. 137, 157, 168 N.E. 116, 124 (1929); *Thorne v. Continental Nat'l Bank & Trust Co.,* 18 Ill.App.2d 163, 173–74, 151 N.E.2d 398, 403–04 (1958). Thus, the gravamen of plaintiffs' complaint in 1961 was that Continental's investments, restricted by the terms of the trust, were causing the trust injury, the same factual situation giving rise to the present action. Plaintiffs, in 1961, sought reformation as a remedy and this decision bars plaintiffs under res judicata principles from relitigating in this suit the cause of loss to plaintiffs prior to 1961 from Continental's investment decisions.

Plaintiffs argue, however, that because in the case at bar their complaint alleges improper conduct by Continental in administering the Mora trust, and that in the 1961 litigation they alleged the trust instrument caused them injury, the two cases involve different factual situations and res judicata should not bar plaintiffs from seeking recovery for Continental's actions occurring prior to 1961. But, while it is true that the allegations of the two suits differ, as stated previously the underlying factual situation, *i. e.,* the actual investments made by Continental prior to 1961, is the same in both suits. Plaintiffs, in the present suit, have merely alleged an alternate and inconsistent basis for relief and, under both Illinois and federal procedures, this inconsistent theory could have been presented in plaintiffs' prior suit for reformation relief. Ill.Rev.Stat. ch. 110, §§ 43(2), 44; Fed.R.Civ.P. 8(e)(2). Since plaintiffs could have presented this alternative theory, and plaintiffs have suggested no substantial reason and have presented no evidence for their failure to do so, res judicata bars them from litigating the matter in the instant action. *See Brachett v. Universal Life Ins. Co.,* 519 F.2d 1072 (5th Cir. 1975).

It is important to note, moreover, that in an analogous situation the Seventh Circuit has approved the application of res judicata to bar a subsequent action. In *Hennepin Paper Co. v. Fort Wayne Corrugated Paper Co.,* 153 F.2d 822 (7th Cir. 1946), the plaintiff had filed a prior suit seeking damages for defendant's breach of a contract as orally modified. Plaintiff lost in that suit and thereupon filed a second action seeking reformation of the written agreement for the purpose of having it brought into conformity with the initial intentions of the parties. The Seventh Circuit held that under both federal and Indiana law, plaintiff could have presented both theories in the initial proceeding and that its failure to do so precluded its present action for reformation. The court stated:

It made its election in the first action and it cannot now, in a separate action, assume an entirely different and inconsistent position in an effort to have the same written contract reformed. As heretofore observed, such effort, if it desired a reformation of the contract, should have been undertaken in the first action.

*Id.* at 826.

While the court in *Hennepin* employed the language of "election," in *Lambert v. Conrad,* 536 F.2d 1183 (7th Cir. 1976), the Seventh Circuit reaffirmed the viability of *Hennepin* and characterized it as grounded

in res judicata principles. *Id.* at 1185. Furthermore, the American Law Institute has employed the facts of *Hennepin* as an example of the proper application of res judicata. *See* Restatement (Second) of Judgments § 61.1, Comment i(3), at 107 (Tent. Draft No. 1, 1973).

It is clear that the situation in *Hennepin* is the mirror image of the situation presently before the court. In the case at bar, plaintiffs sought reformation of a written instrument and subsequently sought damages for breach of that agreement by defendant. In *Hennepin,* plaintiff sought damages for breach of an agreement and subsequently sought reformation of the agreement. This court sees no reason for finding preclusion in the latter case and not in the former. Both cases involve the presentation of two divergent views of the ultimate facts concerning the relationships between the parties and plaintiffs in both suits could have litigated everything in their initial proceeding.

In conclusion, this court holds that plaintiffs may not seek damages from defendant in this cause based on allegations of improper investment decisions made by Continental prior to June 15, 1961. In the litigation process there is a need for finality and under principles of res judicata the litigation between these parties concerning the injury to the trust prior to 1961 ended with the June 16, 1961 reformation judgment. Defendant, after 10 years of tranquility, had a right to believe that all these matters had been decided. Therefore, there being no genuine issue of material fact, defendant's motion for partial summary judgment is granted.[1]

---

1. It should be noted that defendant also raised the doctrine of judicial estoppel, or preclusion against adopting inconsistent positions in two litigations, as barring plaintiffs' pre-1961 allegations. While this court's resolution of the case on res judicata grounds makes it unnecessary to reach this issue, this court does recognize that the Seventh Circuit has given support to defendant's position. *Chicago, S.S. & S.B. R.R. v. Fleming,* 109 F.2d 419 (7th Cir. 1940).